UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RONALD SHURLEY, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Cause No. 3:04-CV-633 RM |
| ) | |
| JO ANNE B. BARNHART, ) | |
| COMMISSIONER, SOCIAL ) | |
| SECURITY ) | |
| ) | |
| Defendant ) | |

MEMORANDUM AND OPINION

Ronald Shurley seeks judicial review of a final decision of the Commissioner of Social Security granting his application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, for the period between April 24, 1999 through November 5, 2001.

Mr. Shurley worked as a foreman maintaining high voltage electrical equipment. On April 24, 1999, as he worked on an electrical substation, a transformer released 345 kilovolts of electricity, causing third degree burns over 42 percent of his body. Mr. Shurley was treated at Loyola University Hospital for more than a month, including two skin graft surgeries. Over the course of physical therapy, Mr. Shurley also underwent "Z" plasty surgeries, "skin movement" and liposuction on January 29 and April 19, 2001.

Mr. Shurley's major release surgery was conducted on June 21, 2000. He continued with physical therapy and work conditioning until November 15, 2001. He sought disability insurance benefits on September 7, 2001. In the course of

appealing a denial of benefits, he was given a consultive examination on November 6, 2001.

The Administrative Law Judge found that Mr. Shurley was entitled to disability benefits for the period from his accident through November 5, 2001, when, the ALJ found, Mr. Shurley showed significant medical improvement. According to the ALJ, Mr. Shurley's residual functional capacity and nonexertional limitations supported the conclusion that he was capable of a wide range of light exertional work activities by November 6, 2001. Mr. Shurley disagrees with that finding.

When the Appeals Council denied Mr. Shurley's request for review, the ALJ's decision became the final decision of the Commissioner of Social Security. 20 C.F.R. § 404.981; Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). This appeal followed. For the following reasons, the court affirms the Commissioner's decision.

The Social Security Act defines "disability" as "[A]n inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner conducts a five-step inquiry in determining whether a claimant's condition is a disability according to the Act: (1) Is the claimant working and engaged in substantial gainful activity? (2) Is the claimant's impairment, or combination of impairments, severe (does it limit his ability to perform basic work activities)? (3) Does the impairment meet or exceed

2

any of the specific listed impairments in 20 C.F.R Part 404, Subpt. P, App. 1, which the Commissioner deems to be conclusively disabling? (4) Is the claimant unable to perform his past relevant work? (5) Is the claimant unable to perform any other type of work? 20 C.F.R. §§ 404.1520(a)(4)(i) - (v); Rice v. Barnhart, 384 F.3d 363, 365 (7th Cir. 2004). The process is sequential, so if the ALJ finds conclusively at any step that the claimant is or is not disabled, the inquiry need not progress to the next step. 20 C.F.R. § 404.1520(a)(4). If the claimant makes it past step four, the burden shifts to the Commissioner to demonstrate that the claimant can successfully perform a significant number of jobs that exist in the national economy. Zurawski v. Halter, 245 F.3d 881, 886 (7th Cir. 2001).

Mr. Shurley's claim focuses on the fifth step of the process. The ALJ determined that Mr. Shurley wasn't engaged in substantial gainful activity, and that his impairments were severe but not among those listed as conclusively disabling under the Social Security Administration regulations. Under step four of the inquiry, the ALJ found that Mr. Shurley was unable to return to his past work as an electrician. The ALJ concluded that for the period of April 24, 1999 through November 5, 2001, he was unable to perform jobs existing in significant numbers in the economy, but from that point forward had the residual functional capacity to perform a wide range of jobs existing in the economy.

Mr. Shurley contends that his waiver of his right to representation by counsel before the ALJ was invalid, that the ALJ improperly disregarded his testimony and relied exclusively on consulting physician's testimony, that the ALJ

3

improperly failed to make specific findings on each impairment presented in the record (including specific limitations caused by the loss of Mr. Shurley's right index finger and evidence that Mr. Shurley was in the "borderline" category for clinical depression). Mr. Shurley also has submitted evidence of additional surgeries performed after the ALJ's cut-off date to illustrate that he was still disabled as of November 5, 2001.

Section 405(g) of Title 42 of the United States Code provides for limited review of the Secretary's final decision. Jones v. Shalala, 10 F.3d 522, 523 (7th Cir. 1993). This court must sustain the ALJ's findings so long as they are supported by substantial evidence. 42 U.S.C. 405(g); Scott v. Barnhart, 297 F.3d 589, 593 (7th Cir. 2002); Schoenfeld v. Apfel, 237 F.3d 788, 792 (7th Cir. 2001). The term substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); *see also* Rice v. Barnhart, 384 F.3d at 368-369. A court may not substitute its judgment for that of the ALJ by reconsidering the facts, reweighing the evidence or resolving factual disputes. Scott v. Barnhart, 297 F.3d at 593; Maggard v. Apfel, 167 F.3d 376, 378 (7th Cir, 1999). The reviewing court may not reconsider credibility determinations made by the ALJ unless those determinations are patently wrong. Zurawski v. Halter, 245 F.3d at 887; Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000).

While the ALJ needn't discuss every piece of evidence in the record, Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001), the decision must demonstrate

4

the path of his reasoning, and the evidence must lead logically to his conclusion. Rohan v. Chater, 98 F.3d 966, 971 (7th Cir. 1996). Remand is required if the reviewing court cannot discern an "accurate and logical bridge between the evidence and the result." Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996).

The court agrees with Mr. Shurley that he wasn't properly advised of his right to counsel, so his waiver of that right is invalid. Claimants have a statutory right to representation by counsel at their disability benefits hearing. 42 U.S.C. § 406; 20 C.F.R. § 404.1700; Binion v. Shalala, 13 F.3d 243, 245 (7th Cir. 1994). A claimant effectively waives the right to counsel only if the ALJ has explained to the *pro se* claimant (1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and the requirement that the court approve the fees. Id. at 245.

Invalid waiver of the claimant's right to counsel provides cause for remand only if the ALJ has failed to develop a full and fair record. Id. When notice hasn't been sufficiently provided to a *pro se* claimant, it becomes the Commissioner's burden to show that the ALJ has met a heightened duty to develop the record fully and fairly. Id.

Although no hard and fast standard delineates what is "full and fair" development of the record, "'a significant omission is usually required before this court will find that the Secretary failed to assist *pro se* claimants in developing the record fully and fairly.'" Nelson v. Apfel, 131 F.3d 1228, 1235 (7th Cir. 1997). A

court considers whether the ALJ obtained all of the claimant's medical treatment records, whether the ALJ elicited detailed testimony from the claimant regarding relevant areas (such as medical evidence in the record, medications, daily activities and the nature of all physical and mental limitations), and whether the ALJ heard testimony from examining or treating physicians. *See e.g.* Binion v. Shalala, 13 F.3d at 245.

Once the Commissioner has met her burden of showing that the ALJ fully and fairly developed the record, the claimant may still rebut the Commissioner's evidence with additional evidence to demonstrate that a significant omission exists in the record. Binion v. Shalala, 13 F.3d at 245.

Mr. Shurley's notice of his right to counsel was provided in a written pre-hearing notice that included the following statement:

> You may choose to be represented by a lawyer or other person. A representative can help you get evidence, prepare for the hearing, and present your case at the hearing. If you decide to have a representative, you should find one immediately so that he or she can start preparing your case. Some private lawyers charge a fee only if you receive benefits. Some organizations may be able to represent you free of charge. Your representative may not charge or receive a fee unless we approve it. We have enclosed the leaflet "Social Security and Your Right to Representation." We are also enclosing a list of groups that can help you find a representative.

At the outset of Mr. Shurley's hearing, the ALJ asked, "You have the right to be represented by counsel or some other representative of your choice. Do you want to proceed without counsel?" Mr. Shurley responded, "Yes." This was the extent of notice provided.

6

Mr. Shurley wasn't made aware that attorney's fees would be limited to 25 percent of past due benefits. The ALJ's notice to Mr. Shurley of the right to representation doesn't meet the standard required, and the waiver is invalid. Binion v. Shalala, 13 F.3d at 245. Accordingly, this court's review must look first to whether the Commissioner met her burden of showing that the ALJ developed the record fully and fairly.

Even when a claimant proceeds *pro se*, the court respects the ALJ's reasoned judgment on how much evidence is needed to make a finding. Luna v. Shalala, 22 F.3d 687, 692 (7th Cir. 1994). The record has been adequately developed as long as it is supported by substantial evidence. Henderson v. Apfel, 179 F.3d 507, 513 (7th Cir. 1999). The ALJ's judgment will be given deference, unless the evidence reveals a significant omission that prejudiced the claimant. Luna v. Shalala, 22 F.3d at 692; Nelson v. Apfel, 131 F.3d at 1236 (7th Cir. 1997). Because Mr. Shurley's waiver of counsel was invalid, the Commissioner must demonstrate that the ALJ's decision is based on substantial evidence and is without significant omission.

Mr. Shurley asserts two challenges to the weight and sufficiency of evidence. First, Mr. Shurley says that the ALJ disregarded his testimony about physical limitations, despite the ALJ's determination that he was wholly credible. Second, Mr. Shurley says the ALJ relied exclusively on Dr. Inabnit's November 5, 2001 consultative exam, which provided insufficient evidence on which to base a decision.

The Commissioner contends that the ALJ relied on more than just the consultative exam. The Commissioner points out that the ALJ referred specifically to medical records from Loyola Hospital, including records of Dr. Angelats, Dr. Gamelli, and Larry Bennet, a social worker on staff at Loyola. The Commissioner also points to November 14, 2001 progress notes from Mr. Shurley's rehabilitation program to indicate that the ALJ utilized records beyond Dr. Inabnit's consultative exam.

The Commissioner also shows that the evidence meets the standard of being substantial. The consultative exam indicated that Mr. Shurley experienced minimal limitations in his left shoulder, elbow and wrist. The report showed no weakness in his extremities, and no abnormal movement or atrophy. The report further noted that Mr. Shurley was undergoing physical therapy, exercising, working on his upper and lower body and using a treadmill regularly. The Commissioner also points to non-medical findings in the report concerning Mr. Shurley's ability to perform daily activities, such as writing a letter, dressing himself, doing light housework, shopping and doing laundry, as well as Mr. Shurley's own testimony regarding his condition.

The Commissioner has shown that the record was fully developed. Under the framework established in <u>Binion</u>, Mr. Shurley may still rebut this showing by demonstrating an evidentiary gap that has prejudiced his claim. <u>Binion v. Shalala</u>, 13 F.3d at 245. Toward that end, Mr. Shurley argues that he testified (credibly, the ALJ said) about his physical limitations and never indicated that these

8

problems "stopped or were resolved" by November 5, 2001.

This detail doesn't amount to an omission. The ALJ's determination wasn't grounded on a finding that Mr. Shurley's impairments had ceased completely as of November 5, 2001. The ALJ's findings described Mr. Shurley as capable of performing light exertional work activities. His hypothetical questions to the testifying vocational expert were based upon an individual able to perform at the light exertional level, limited to occupations that don't require overhead reaching and only limited lifting with the upper left extremity. Questions posed to the vocational expert also included variants based upon working in conditions with temperature extremes, as well as with varying ability to maintain attention, concentration or regular attendance. The ALJ's conclusion was based on Mr. Shurley's improvement, not upon complete recovery.

Mr. Shurley's testimony was consistent with the ALJ's conclusion. He testified that he had some limitations on walking, but had no problems standing or sitting. He testified that he could lift up to 20 to 50 pounds, but was limited based on the configuration of the object being lifted. He said he believed he was functioning a lot better at the time of the hearing than when he was undergoing his surgeries. The ALJ's decision and Mr. Shurley's testimony agree that, despite on-going limitations, his condition has improved. The ALJ concluded that this improvement warranted a finding that Mr. Shurley is capable of working.

The Commissioner has shown that the ALJ developed a full and fair record, and Mr. Shurley hasn't demonstrated a significant omission that prejudiced his

9

claim.

Mr. Shurley next argues that the ALJ's development of the record wasn't full and fair because the ALJ didn't make specific findings regarding the severity of each impairment.

The ALJ isn't required to discuss every piece of evidence in the record. Dixon v. Massanari, 270 F.3d at 1176. The ALJ must demonstrate the path of his reasoning in such a way that a reviewing court may discern an accurate and logical bridge between the evidence and the result. Rohan v. Chater, 98 F.3d at 971; Sarchet v. Chater, 78 F.3d at 307. Because Mr. Shurley's waiver of counsel was ineffective, the Commissioner must show that if evidence was not considered by the ALJ, the record nonetheless was fully and fairly developed.

Mr. Shurley says that the ALJ's decision didn't address impairments to his leg, right hand, manipulative limitations and emotional and psychological damage. Dr. Inabnit's report addressed Mr. Shurley's leg and hand impairment: he had normal walk, normal motion at hips, no strength deficits in lower extremities, and reported using a treadmill regularly. Regarding Mr. Shurley's hands, Dr. Inabnit reported reduced bilateral grip strength and minimally reduced left wrist motion but that fine and gross motor skills were intact. At the consultative exam, Mr. Shurley reported that he could pick up a coin, dress himself, drive a car, do light housework, shop and do laundry. Mr. Shurley's testimony added that he cooked, did dishes, did minor plumbing, and painted. The ALJ questioned Mr. Shurley about the loss of a finger on his right hand from a previous accident. Mr. Shurley

10

responded, "With the right hand, I do have a bit more of a gripping problem, but not like the lifting problem that I have with the left side."

The Commissioner has shown that the physical impairments that Mr. Shurley cites were fully and fairly developed in the record.

Mr. Shurley also argues that the record is developed inadequately because there were no specific findings on mental impairments. He says the ALJ had a duty to probe into mental impairments, including depression, based on the evidence before the ALJ.

The ALJ's duty with respect to a *pro se* claimant requires that he probe for all possible disabilities and uncovers all of the relevant evidence. Binion v. Shalala, 13 F.3d at 245. The ALJ's duty is not limited to only the impairments the claimant reports, but also those about which the ALJ receives evidence. Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004); 20 C.F.R. § 404.1512(a); Clifford v. Apfel, 227 F.3d 863, 873 (7th Cir. 2000) (numerous references in the record should have alerted ALJ to claimant's weight problem). The Commissioner must demonstrate that the ALJ has met this duty. Binion v. Shalala, 13 F.3d at 245.

The Commissioner asserts that depression is outside the scope of Mr. Shurley's claim, noting that the evidence Mr. Shurley submitted with his disability claim was limited to treatment and medical procedures resulting from his burn injury. When the ALJ asked Mr. Shurley if there were "anything else that would affect your ability to work that I need to consider?," Mr. Shurley responded that he was insecure about his scarring. In response to questions about his social

11

activities, Mr. Shurley responded that he remained socially active. Dr. Inabnit described Mr. Shurley as "alert and oriented times three, is appropriate and responds to questions and appears to be of normal intelligence."

Though this is minimal evidence that the ALJ specifically considered depression, the ALJ wasn't required to further develop the record of Mr. Shurley's mental impairments. Nothing in the record should have alerted the ALJ to depression as a component of Mr. Shurley's disability claim to a degree that required more. Unlike Skarbek and Clifford, which presented numerous references, Mr. Shurley's record provided just two references to depression. A June 2001 Initial Evaluation for LaPorte Hospital Rehabilitation Services noted Mr. Shurley's subjective complaints of "frustration, lack of motivation, feelings of despair and depression." The consultative exam ordered by the Commissioner indicated that Mr. Shurley scored at the bottom of the range for "borderline clinical depression." No evidence submitted by Mr. Shurley indicates that he sought treatment for depression or alleged it as a basis for disability insurance benefits. *See e.g.* Scheck v. Barnhart, 357 F.3d 697, 702 (7th Cir. 2004).

The ALJ fulfilled any duty he had to develop the record regarding Mr. Shurley's signs of depression. There is no evidentiary gap in the record and there is no indication that Mr. Shurley's was prejudiced by the ALJ's failure to develop this issue further.

Based on the ALJ's statements about training during the course of the hearing, Mr. Shurley suggests that the ALJ implied a belief that Mr. Shurley

wasn't able to return to work without additional training. The ALJ said, "I'm surprised they haven't taken more steps to get you retrained." This, Mr. Shurley says, is evidence that the ALJ "failed to develop" the issue of vocational retraining. The disability determination at Step Five of the sequential process isn't dependent on whether retraining has occurred. "If you can make an adjustment to other work, we will find that you are not disabled." 20 C.F.R. § 404.1520(a)(4)(v); "We will look at your ability to adjust to other work by considering your residual functional capacity and your vocational factors of age, education, and work experience." 20 C.F.R. 404.1560(c). The regulations speak in terms of the ability to adjust, and don't require an ALJ to make a finding or to develop evidence on the amount of retraining a claimant has undergone.

Finally, Mr. Shurley says that the ALJ's decision was improperly labeled a "Fully Favorable" decision, when it was a "Partially Favorable" decision, making it possible that he might not have recognized his right to appeal the ALJ's decision. Mr. Shurley's application before this court shows that he hasn't suffered the only harm he alleges may have occurred from the ALJ's titling the decision "Fully Favorable."

Mr. Shurley has submitted additional evidence with his application for judicial review designed to show that he hadn't reached "maximum medical improvement." According to Mr. Shurley, because additional surgery was later performed, he could not have made significant medical improvement by the time of the hearing. This evidence includes records of a March 29, 2004 surgery for left

13

arm and shoulder scar contracture and excision of neuroma in the forearm, a July 22, 2004 surgery and an August 2, 2004 work release form from Dr. Robbins noting that he was "unable to return to work at this time."

A district court may remand a case on the basis of evidence that is new and material if there is good cause for the failure to incorporate evidence into the record in the prior proceeding. Schmidt v. Barnhart, 395 F.3d 737, 741-742 (7th Cir. 2005). Evidence is material if there is a reasonable probability that the ALJ would have reached a different conclusion had the evidence been considered. Id., *citing* Johnson v. Apfel, 191 F.3d 770, 776 (7th Cir. 1999). New evidence is material only if it is relevant to the claimant's condition "during the relevant time period encompassed by the disability application under review." Id., *citing* Kapusta v. Sullivan, 900 F.2d 94, 97 (7th Cir. 1990); 20 C.F.R. § 404.970(b) (Appeals Council will consider new and material evidence "if it relates to the period on or before the date of the administrative law judge hearing decision.").

Mr. Shurley provides evidence of additional surgeries that were undertaken following the ALJ's November 2001 determination that Mr. Shurley was capable of working. Mr. Shurley has relied on the existence of these procedures, but the evidence doesn't show how these surgeries are inconsistent with the ALJ's determination. The court would need to reason that, simply because these additional procedures occurred, the ALJ could not have properly determined that he had made significant medical improvement. Subsequent medical treatment is not conclusive of Mr. Shurley's condition up to the time of the ALJ's decision. *See*

14

*e.g.* Godsey v. Bowen, 832 F.2d 443, 445 (7th Cir. 1989) ("The evidence here was immaterial...since the fact that the condition had deteriorated by 1986 does not show that in 1983 it was otherwise then found at the administrative hearing."). Because the record doesn't indicate that the surgeries render the ALJ's decision inaccurate, and because the additional surgeries don't relate to the relevant time period, the new evidence is not material.

The Commissioner's decision recognized that while Mr. Shurley hasn't regained the abilities he had before his terrible injury, he has recovered to the point that he can perform light exertional work activities. Under the standards that govern review in this court, it cannot be said that the Commissioner was wrong. Accordingly, the court AFFIRMS the Commissioner's decision.

SO ORDERED.

ENTERED:     October 14, 2005

    /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court